# NOBLE *v.* CRANE.

---

**BILL OF REVIEW; NEWLY DISCOVERED EVIDENCE.**

A bill of review will not be sustained upon an allegation of the discovery
    of new and material facts, where the matters alleged might have been

discovered before by the party by the exercise of reasonable diligence. (Citing *Osborne* v. *S. L. Davidson Mortg. Co.* 8 App. D. C. 481.)

No. 2446.   Submitted December 3, 1912.   Decided February 25, 1913.

HEARING on an appeal by the complainant from a decree dismissing a bill of review. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a bill of review filed April 15th, 1912, by Harriett E. Noble against Augustus Crane, Jr., Albion K. Farris, and Eugene E. Thompson, a partnership trading under the name of Crane, Farris, & Co.

The bill alleges that plaintiff filed a bill of complaint in the supreme court of the District of Columbia against the defendant on June 29, 1908, which bill was amended by leave of court November 28, 1908. The original and amended bills are set out in this.

The allegations of the amended bill are:

1. That the defendants, Crane, Farris, & Co., are engaged in a banking and brokerage business, and hold themselves out to the public for the purchase and sale of stocks and bonds. On April 25, 1900, plaintiff became a customer of defendants by directing them to purchase certain shares of a corporation, to wit, 100 shares of stock in the Federal Steel Corporation. Plaintiff advanced a certain portion of the purchase price of said stock, called her "margin," in order to cover the changes in value of the stock caused by the fluctuations in the market, and the defendants loaned to the plaintiff the remainder of the money necessary to make the said purchase, charging the same to her account. The said stocks were understood to be held by or under the control of the defendants as the plaintiff's brokers. The defendants reported such purchases as having been made. Thereafter from time to time, plaintiff directed the defendants to purchase stocks similarly upon a margin, and

the defendants from time to time reported to the plaintiff that such stocks had been purchased.

2. On the 26th day of April, 1900, the plaintiff directed the defendant to sell certain shares of stock in a corporation, to wit, 100 shares in the Federal Steel Corporation, the amount realized from the sale at the market value, less the defendant's commissions for the sale, to be credited to the plaintiff's account with the defendants. The defendants reported such sale as having been made. Thereafter, from time to time, the plaintiff directed the defendant to sell certain other stocks, and the defendant from time to time reported to the complainant that such stocks had been sold.

3. Plaintiff has continuously from the 25th day of April, 1900, to the present time, had, and still has, an account with the defendants for the carrying on of such transactions as above mentioned, and the defendants now hold or claim to hold as brokers or agents of the plaintiff the following securities:

100 Shares Erie R. R. 2d Preferred.
100 ” Rock Island R. R. ”
205 ” Missouri Pacific R. R. Stock.
100 ” United States Rubber Co. 1st Preferred.
100 ” United States Steel Corporation Preferred.

$3,000 Southern Pacific R. R. Collateral Gold Bonds 4%, of a market value of a large sum of money, to wit, $42,700, on account of the purchase of which the plaintiff is charged by the defendants with $57,625, and on which the plaintiff has a margin credit of $13,230.

4. The plaintiff has from time to time during the period mentioned paid to the defendants sums aggregating $60,000, and has received during the same period the sum of about $31,-000, and is now credited by the defendants with a "margin" of $13,230.21, so that, independently of any real or supposed stock transactions, the plaintff has lost through her dealings with and through the defendants the sum of about $15,770, besides the use of the money deposited with the defendants.

5. During the said period defendants from time to time rendered to plaintiff accounts of the transactions directed by

the complainant to be made, which accounts showed only the stocks sold and their prices. Nevertheless, during all of the transactions, the plaintiff was led by the defendants to believe, and did believe, that the purchases and sales reported as made by the defendants were actually made by a purchase or sale and delivery, of the shares of stock or other things reported as bought and sold, and that there were no false or fraudulent entries on said accounts as to the purchase, holding, or sale of said stock, or the crediting of dividends, or the charging of interest; and if it is true that the purchase and sales reported to the plaintiff were not in fact made, or that said transactions were in whole or part fictitious, or that the entries on said accounts or any of them were false or fraudulent, the plaintiff was, at the time of the acceptance of the accounts rendered by the defendants, entirely ignorant of that fact, and plaintiff avers that she accepted the accounts rendered by the defendants upon the promise of the reality of the transactions reported as having been made, and that plaintiff has never accepted accounts of, nor assented to, any fictitious purchases of sales by the defendants.

That in all the accounts rendered by the defendant to plaintiff the defendants charged as a commission an amount equal to $\frac{1}{8}$ of 1 per cent of the par value of the stock in respect of each of the purchases and sales reported, and during said period plaintiff was led by the defendant to believe that the commission so paid was the only compensation received by them and the only profit made by reason of the transactions carried on by plaintiffs through them.

6. That on the 5th day of February, 1908, the plaintiff learned for the first time that certain of the stocks alleged to have been hold by defendants for her were not actually bought and sold for her in good faith, but that they made merely fictitious or pretended sales, and that the accounts rendered to her were false and misleading in that they stated and made it appear that the defendants charged to your plaintiff a commission of $\frac{1}{8}$ of 1 per cent for each purchase and sale of stock on her account, and made it appear that this was the only profit

made by the defendant out of the matters and transactions in which they acted as agents for the plaintiff, whereas, the fact was, as plaintiff learned then for the first time, that the charge of said commission was not a charge for part of the services rendered, but, on the contrary, unknown to plaintiff, defendants paid over this commission to certain agents and brokers in New York, and that they, the defendants, made secret and illegal profits out of the matters and transactions in which they acted as her agents, by borrowing money in New York for the use of the plaintiff.

7. Upon learning these facts, plaintiff, on the 5th day of February, 1908, demanded from defendants an accounting of all her transactions with them, showing what stock they had purchased for her and from whom, the price paid, and what shares they were, and what they received, what interest they had charged against her on money advanced to her and on monies borrowed by them for her account, and what credits they had given her on account of interest and on account of dividends paid on account of the shares of stock alleged to have been held by them, and what charges they had made against her on account of commissions, and what, if any, other profits the had made out of the transactions and matters in which they had acted as her agents. But the said defendants then and there refused and have since refused to give plaintiff a full and true accounting of the matters and transactions carried on by them as her agents, and have refused and still refuse to furnish to your plaintiff true and accurate information in compliance with her demand last above mentioned.

8. Some time after the demand made for an accounting, the defendants gave to plaintiff a certain paper writing purporting to be an account of all matters and transactions done and performed by the defendants for her as her agents. Said pretended account purported to give the date of each purchase and sale of stock by defendants, the price paid or given therefor, the interest charged against plaintiff on account of moneys advanced for her benefit, the payments made by defendants to plaintiff, and the payments made by plaintiff to defendants.

Plaintiff avers that said pretended account is false and fraudulent; that some, if not all, of the stocks therein appearing to have been bought and sold by the defendants for the plaintiff were not actually bought and sold by them in good faith, and that no delivery of the said stock was contemplated by them; that some of the names of the vendors and purchasers of the said stock contained in said accounts were fictitious; that many of the said stocks were not actually purchased and sold by the defendants for the plaintiff as her agent, but were merely pretended to be purchased and sold. That the interest charged against her on moneys alleged to have been borrowed by the defendants for the use of the plaintiff was a greater rate than that paid by the defendants to the person or persons from whom they borrowed the said moneys for the use of plaintiff, and that the charges for commissions on the purchases and sales of stock by defendants for complainant, as set forth in said account, are wholly false.

9. Plaintiff is advised and therefore avers that because of the false and fraudulent entries, etc., she is entitled to have the said pretended account set aside, and declared null and void. And because of the many and various items in, and the complicated nature of the transactions had by and between the plaintiff and defendants, and because all the books, reports, etc., are wholly in the possession or under the power and control of the defendants or their agents and servants, plaintiff is entitled to demand and have of and from the defendants full and complete discovery as to all and singular the transactions and matters between her and defendants, and to an accounting, and to that end to have by order of this court an inspection of books, accounts, and other records, etc.

The prayers are that defendants be ordered to make full and true discovery under oath of all and singular the transactions heretofore reported as having been made and done by them as brokers of plaintiff, particularly discovering the names and addresses of the brokers or agents through whom the reported sales on behalf of the plaintiff were made; the names and addresses from whom the defendant made the reported pur-

chases and sales, the place, market, or exchange wherein the reported purchases and sales and each of them were made. What profits, if any, accrued to the defendants by reason of the transactions reported to have been made and done by the defendants as the agents of the plaintiff.

(2) That the accounts heretofore stated between the defendants and the plaintiff may be set aside and be decreed to be of no effect.

(3) That this cause be referred to the auditor under instructions and with power to take testimony, etc.

(4) For general relief.

The answers of the defendants to the said bill are set out in full. They amount to a specific denial of the charges made in the bill. It is further alleged that issue was joined on said answer and proofs taken, and the cause heard in the equity court on May 11, 1910. The decree rendered therein dismisses the bill with costs. The bill further alleges that the plaintiff has discovered since the signing of said decree and the expiration of the term of court at which the same was enrolled that Eugene E. Thompson has become a member of defendants' copartnership; that on February 6, 1912, the defendant Crane, in company with his counsel, called upon plaintiff at the office of her counsel, for the purpose of rendering her statements of account of her transactions with said firm up to and including the day prior thereto, and of tendering to her the stock alleged by them to have been purchased for her and carried in her account at her expense. The said Crane then and there delivered to her statements of account hereto attached and made a part hereof, and also in like manner delivered to her a statement purporting to show the value of said stocks at the close of business on the day preceding, a copy of which is attached, and in like manner tendered to her the following described stocks as the stocks purchased for her and carried in her account. All of which show dates of issuance long after the alleged date of purchase of the same. Also tendered her three bonds of the Southern Pacific Company,

which are not the three bonds which plaintiff delivered to defendant.

Plaintiff says that with the possible exception of the certificate for five shares of Missouri Pacific, none of the certificates of stock tendered to her as aforesaid are the shares of stock charged to her by defendants and carried in her account as having been purchased for her; that if defendants ever purchased any stock for plaintiff, said stocks were converted by them to their own use, and the stocks so tendered to her were purchased by defendants for the purpose of making said tender, or borrowed for that purpose, and were not purchased for plaintiff. She also avers that the prices charged against her are different from the prices rendered in former accounts; a list of the same and the difference in the prices is made a part of the bill.

Plaintiff further shows that at no time, except on said February 6, did the defendants ever exhibit to her any certificate of stock of any kind whatever, or make any tender to her in any other way of any other stock; that the alleged accounts rendered to her from time to time are all based upon the pretended actual purchase for her of stocks at the time of said pretended purchases, in which said accounts the said alleged purchase prices are charged to her, and upon the balances of said purchase prices left after deducting the deposit made by her with defendants on account of said purchases there has continually been charged interest against her, and from which interest there has been deducted in said computation the alleged dividends of said stocks, although, as above shown, the said Erie, Rock Island, Missouri Pacific, United States Rubber, and U. S. Steel Preferred, were issued by said companies from three to ten years after they began to be so charged as against plaintiff.

She further avers that each and every of the accounts rendered by the defendants to her are false and fraudulent; that no stocks were ever actually purchased; that if, at or about the time when the said stocks were first charged to the account

of plaintiff, stocks were purchased by defendants of the kind, denomination, and number of shares charged to her account, defendants continued to use said stocks as their own, without her knowledge or consent, whereby she has been defrauded and cheated by the defendants, with the result that she has lost many thousands of dollars.

Wherefore plaintiff is advised that under the circumstances the decree ought to be reviewed and reversed. The prayers follow the allegations of the bill.

Defendants demurred to the bill, assigning as ground thereof that there is no showing in the same of newly discovered evidence which could not have been discovered by the exercise of reasonable diligence.

Second, that the bill shows on its face that the newly discovered evidence could have been discovered and produced by said plaintiff at any time after the filing of the original bill in this cause. Third, the bill of review shows on its face that plaintiff has been guilty of negligence and laches in the discovery and production of said newly discovered evidence. Fourth, the alleged newly discovered evidence is not sufficient, and would not justify a decree in favor of plaintiff.

The demurrer was sustained June 6, 1912, and plaintiff declining further to amend, the bill of review was dismissed.

From said decree this appeal has been taken.

*Mr. William Henry White* for the appellant.

*Mr. Samuel Maddox, Mr. H. Prescott Gatly,* and *Mr. Barry Mohun* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The bill of review is not founded upon any error of law appearing in the decree passed May 11, 1910, but upon the allegation of the discovery of new and material facts since then.

It is the settled rule in such cases that the matter must not only be new, but such as the party, by the exercise of reasonable diligence, could not have discovered before.  Laches in this respect is fatal to the right.  *Providence Rubber Co.* v. *Goodyear,* 9 Wall. 805, 806, 19 L. ed. 828, 829; *Poole* v. *Nixon,* 9 Pet. 770, 9 L. ed. 305; *Purcell* v. *Miner,* 4 Wall. 519–521, 18 L. ed. 459, 460; *Osborne* v. *S. L. Davidson Mortg. Co.* 8 App. D. C. 481–486.

Tested by this rule, we are of the opinion that there was no error in sustaining the demurrer and dismissing the unamended bill.

The allegations with regard to the failure to make actual purchases of stocks and bonds for the plaintiff, and to hold them subject to her order, were at issue in the pleadings of the parties upon the hearing.  The bill alleges that testimony was taken before that hearing, and the opinion of the court, made a part of the present bill, shows that the plaintiff took the testimony of the New York brokers relating to the purchase and sale of stocks.  The pleadings· showed that defendants retained or claimed to hold all of the stocks and bonds that had been purchased for plaintiff and not again sold, together with a considerable sum of money to her credit to secure her "margins."

Defendants were doing business within the jurisdiction of the court, and they and their books and papers were subject to its process. Had plaintiff called upon them for the production of her securities for inspection, she would have discovered the same matters that she now ·alleges were discovered when, on February 6, 1912, they voluntarily produced and tendered her certain securities which they represented to belong to her, in settlement.

It would set a dangerous precedent to sustain a bill of review under the conditions shown.  The decree is affirmed with costs.                                        *Affirmed.*